# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** : | | Case No. 2:14-CR-127(16) |
| **Plaintiff,** : | | |
| v. : | | **JUDGE ALGENON L. MARBLEY** |
| : | | |
| **CLIFFORD ROBINSON** : | | |
| **Defendant.** : | | |

## UNITED STATES' OPPOSITION TO DEFENDANT CLIFFORD ROBINSON'S MOTION *IN LIMINE*

The United States, by and through undersigned counsel, hereby submits this Opposition to Defendant Clifford Robinson's Motion *in Limine*. For the reasons set forth more fully in the attached memorandum, the defendant's motion is without merit and should be denied.

## MEMORANDUM

On November 23, 2015, Defendant Clifford Robinson filed a motion *in limine*. (Doc. #780.) The defendant requests an order precluding the United States from making any reference to "Cut Throat," "Cut Throat Committee," and "Homicide Squad" during Trial One. The evidence that Mr. Robinson seeks to exclude is directly relevant to the counts in the Superseding Indictment. Moreover, the probative value of this evidence is not substantially outweighed by the risk of unfair prejudice to the defendant. Accordingly, the relief that Mr. Robinson seeks is not warranted and his motion *in limine* should be denied.

## Background

On June 24, 2014, the Grand Jury for the Southern District of Ohio returned the Indictment in this case, which charged 17 defendants with a total of 25 felony counts. (Doc.

1

#14.) Count One alleged that 12 of the named defendants unlawfully conspired to violate 18 U.S.C. § 1962(c) by conducting and participating, directly and indirectly, in the conduct of the affairs of a criminal enterprise known as the Short North Posse through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). (*Id.* at 106-112.) The Indictment went on to list 90 overt acts that the named defendants and others allegedly committed in furtherance of the RICO conspiracy. (*Id.* at 113-128.) Among other crimes, the Indictment also charged various defendants with a total of 17 substantive murder counts: 11 counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); five counts of murder through the use of a firearm during and in relation to a crime of violence and/or a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) and 924(j); and one count of conspiracy to murder a witness, in violation of 18 U.S.C. § 1512(k). (*Id.* at 133-153).

On October 20, 2014, the Grand Jury returned the Superseding Indictment in this case, which increased the number of charged defendants to 20 and the number of felony counts to 38. (Doc. #300.) Count One alleges that 14 of the named defendants engaged in a RICO conspiracy and identifies 112 overt acts that those defendants and others allegedly committed to further that conspiracy. (*Id.* at 1158-1180.) The Superseding Indictment added new charges under 18 U.S.C. § 1959(a)(1) and 18 U.S.C. §§ 924(c) and 924(j), increasing the number of substantive murder counts to 19. (*Id.* at 1185-1213.) Mr. Robinson is named in two of the murder counts, both of which relate to the Donathan Moon homicide in 2007. Count Five charges Mr. Robinson and three co-defendants – Christopher Harris, Robert Wilson, III, and Rastaman Wilson – with murder in aid of racketeering. Count Six charges Mr. Robinson and those same co-defendants with murder through the use of a firearm during and relation to a crime of violence. (*Id.* At 1189-1191.)

On April 2, 2015, the Grand Jury returned a related Indictment charging four defendants with murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), and murder through the use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) and 924(j). (Case No. 2:15-CR-80, Doc. #1.) Those charges arise out of the 2007 murder of Marschell Brumfield, Jr. On May 26, 2015, the Court granted the United States' motion to join the Superseding Indictment with the Indictment filed in case number 2:15-CR-80, which brought the total number of felony counts to 40. (Doc. #595.)

## Argument

### I. Evidence Regarding Cut Throat and Homicide Squad is Admissible Under Rule 401.

The Federal Rules of Evidence provide that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence can be relevant even if it does not relate to an element of a charged offense or to a fact in dispute, so long as it provides background information about the defendant or the offenses. Fed. R. Evid. 401, advisory committee's note ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."). There is a "low threshold" for establishing that evidence is relevant under Rule 401. *Tennard v. Dretke*, 542 U.S. 274, 285 (2004). Thus, a defendant "faces a significant obstacle in arguing that evidence should be barred because it is not relevant." *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012). This is an obstacle that Mr. Robinson cannot overcome.

In the Sixth Circuit, "[e]vidence of gang affiliation is relevant where it demonstrates the relationship between people and that relationship is an issue in the case, such as in a conspiracy case." *United States v. Ford*, 761 F.3d 641, 649 (6th Cir. 2014); *see United States v. Gibbs*, 182

3

F.3d 408, 1999 U.S. App. LEXIS 36343, at *42 (6th Cir. 1999) ("Gang affiliation is particularly relevant, and has been held admissible, in cases where the interrelationship between people is a central issue."). Such evidence is also admissible "to establish the defendant's opportunity to commit a crime." *United States v. Tolbert*, 8 Fed. Appx. 372, 379 (6th Cir. 2001). Evidence of a defendant's association with a criminal gang is inadmissible only if "there is *no* connection between the gang evidence and the charged offense." *United States v. Anderson*, 333 Fed. Appx. 17, 24 (6th Cir. 2009) (emphasis added).

This case involves a wide-ranging RICO conspiracy among members and associates of the Short North Posse criminal enterprise, making "the relationship between people" a central issue. *Ford*, 761 F.3d at 649. The Superseding Indictment describes how some members of the Short North Posse created sub-groups called "Cut Throat" (or the "Cut Throat Committee") and the "Homicide Squad." The Superseding Indictment states, in pertinent part:

> Originally members of the enterprise referred to themselves solely as 'Short North Posse' or 'SNP.' Later some members began subsets of the Short North Posse referring to themselves as 'Cut Throat' and 'Homicide Squad.' Still within the Short North Posse, Cut Throat and Homicide Squad specialized in murders and robberies of rival gang members, other drug dealers, and targets thought to have large sums of cash or firearms.

(Doc. #300 at 1155.) Members of Cut Throat and Homicide Squad served as the enforcers for the Short North Posse, and they engaged in much of the violent racketeering activity that is alleged in the Superseding Indictment. Mr. Robinson asserts that evidence related to Cut Throat and Homicide Squad is not relevant to his own case, but that argument misses the mark in at least two ways.

First, Mr. Robinson will not be the only defendant to stand trial on April 4, 2016, and the murder of Donathan Moon will not be the only crime presented to the jury in Trial One. In fact, Trial One will involve seven defendants and 16 counts. The existence of Cut Throat and

Homicide Squad, and the conduct of the groups' respective members, go directly to the nature, structure, and activities of the RICO enterprise charged in Count One.  And, as is explained below, this evidence is also relevant to the eight murders committed in furtherance of the conspiracy that will be tried in Trial One.

Second, though he is not charged in Count One, Mr. Robinson cannot distance himself from the Short North Posse.  Count Five charges Mr. Robinson with murder in aid of racketeering based on his association with the Short North Posse.  Specifically, Mr. Robinson and three co-defendants[1] allegedly killed Donathan Moon "as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Short North Posse[.]"  (Doc. #300 at 1189.)  This Court previously ruled that "all of the criminal activity alleged [in the Superseding Indictment] flows from the same overarching RICO conspiracy" and "*all* of the counts were overt acts taken in furtherance of the conspiracy."  (Doc. #727 at 3345, 3346.) (emphasis in original).  Thus, the fact that Mr. Robinson is not named in Count One is of no consequence.  The existence and racketeering activities of an enterprise (*i.e.*, the Short North Posse) are elements of the offense with which he is charged in Count Five, meaning the United States must present this evidence in order to secure the convictions of Mr. Robinson and his co-defendants.  *See* Fifth Circuit Pattern Criminal Jury Instructions § 2.78 (2015) (outlining elements of violation of 18 U.S.C. § 1959(a)(1)); *United States v. Wilson*, 579 Fed. Appx. 338, 342-343 (6th Cir. 2014) (same); *United States v. Umana*, 750 F.3d 320, 334-335 (4th Cir. 2014) (same).

Because five of the defendants in Trial One are charged with RICO conspiracy and the remaining two defendants (including Mr. Robinson) are accused of committing murder in

---

[1] At trial, the evidence will show that two of those defendants, Christopher Harris and Robert Wilson, III, were members of the Homicide Squad.

furtherance of the same conspiracy, the prosecution of all defendants in Trial One "will require an identical determination regarding the existence of the Short North Posse as an enterprise engaged in racketeering activity." (Doc. #727 at 3345.) Evidence pertaining to Cut Throat and Homicide Squad, violent subsets of the Short North Posse whose members allegedly committed many of the criminal acts charged in the Superseding Indictment, goes to the heart of the existence and operation of the RICO enterprise and therefore is admissible in Trial One under Rule 401.

## II. Evidence Regarding Cut Throat and Homicide Squad is Admissible Under Rule 403.

The Federal Rules of Evidence provide that a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of… unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. District courts have broad discretion in making determinations under Rule 403. *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993). As such, a court's decision to admit or exclude evidence under Rule 403 is afforded great deference and "will not be lightly overruled." *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006).

Rule 403 offers a party no protection from evidence that is merely "prejudicial." All evidence prejudices the interests of one party or another. Instead, Rule 403 is concerned only with the danger of *unfair* prejudice. In the words of the Sixth Circuit, "the prejudice to be weighed is the *unfair* prejudice caused by admission of the evidence. Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." *Id.* at 456 (emphasis in original); *see United States v. Howard*, 621 F.3d 433, 457 (6th Cir. 2010) ("[U]nfair prejudice does not mean the damage to a defendant's case that results

6

from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis.").

"Although prejudicial to a defendant, evidence of gang affiliation can be sufficiently probative to survive a Rule 403 challenge." *United States v. Williams*, 158 Fed. Appx. 651, 653 (6th Cir. 2005). To that end, the Sixth Circuit has rejected Rule 403 challenges to gang affiliation evidence in cases similar to this one. For example, in *Ford*, four defendants were charged with conspiracy to commit a series of armed robberies. The Sixth Circuit affirmed the district court's decision to admit evidence of gang affiliation, finding it "relevant because it demonstrates the relationship amongst the co-conspirators." *Ford*, 761 F.3d at 650. The Sixth Circuit reasoned that "the evidence furthered the Government's theory that the co-conspirators were a distinct subset of the many people involved in the Fallen Angels record label and that the bond between the subset was their involvement in the Vice Lords," a criminal gang. *Id.* A defendant's association with a gang is admissible even if the evidence in question includes violent or disturbing references. *See Gibbs*, 182 F.3d 408, 1999 U.S. App. LEXIS 36343, at *41-42 (holding that t-shirts containing references to "Short North" and "4th Street Posse" were admissible against alleged member of Short North Posse, despite fact that shirts included language such as "Death Row" and "Caps get peel'd," had drawing of a tombstone, and referenced shootings).[2]

As previously discussed, evidence concerning Cut Throat and Homicide Squad is probative of the RICO conspiracy count and the substantive murder counts (including one of the counts in which Mr. Robinson is charged) at issue in Trial One. To prevail on his motion,

---

[2] In some cases in which defendants moved to exclude gang-related evidence under Rule 403, the Sixth Circuit affirmed the district courts' rulings under a harmless error analysis. *See*, *e.g.*, *Tolbert*, 8 Fed. Appx. at 379; *cf. Anderson*, 333 Fed. Appx. at 24 (concluding that admission of evidence was harmless because defendant's gang affiliation was not central to prosecution's case).

Mr. Robinson must make a compelling argument concerning the risk of unfair prejudice.  He has failed to do so.

The unfair prejudice about which Mr. Robinson complains is difficult to define.  This defendant is not charged in Count One.  The United States does not allege that he was a member of Cut Throat or Homicide Squad, nor does it allege that he was attempting to gain entrance to these subsets when he participated in the murder of Donathan Moon.  Mr. Robinson is left to argue that if the United States offers evidence of the existence and activities of Cut Throat and Homicide Squad and the membership of defendants *other than him* in these groups, his right to a fair trial somehow will be violated.

We have been down this road before.  Earlier this year, 12 defendants (including Mr. Robinson) moved for separate trials, and their "primary severance argument" concerned the "potential for prejudicial 'spillover' evidence" – the notion that "the jury might convict them not on the basis of the evidence unique to *each* defendant, but, rather, by imputing guilt to *all* based on the conduct of, and evidence against, their co-defendants." (Doc. #727 at 3349) (emphasis in original).  This Court rejected the argument then, and it should reject it again now.  (*Id.* at 3353.)

It would be curious indeed for the Court to rule that, on the one hand, the introduction of evidence regarding some defendants but not others in Trial One does not justify severance, and then, on the other hand, to prohibit the United States from introducing that same evidence in Trial One on the ground that it does not apply to Mr. Robinson in the same way that it applies to several of his co-defendants.  As the Sixth Circuit has observed, a likely disparity in the quantity and quality of evidence against various co-defendants is not a basis for relief, because "[t]he presentation of evidence applicable to more than one defendant is simply a fact of life in multiple

8

defendant cases." *United States v. Causey*, 834 F.2d 1277, 1288 (6th Cir. 1987).[3]

Mr. Robinson's motion also does not account for the availability of measures less drastic than the exclusion of evidence. To the extent that the introduction of evidence related to Cut Throat and Homicide Squad exposes Mr. Robinson to any unfair prejudice, that prejudice can be cured with proper limiting instructions to the jury. *See United States v. Mays*, 69 F.3d 116, 120 (6th Cir. 1995) (explaining that "juries are presumed capable of following instructions regarding the sorting of evidence and the separate consideration of multiple defendants").

The United States did not assign the names "Cut Throat" and "Homicide Squad" to various members of the Short North Posse. To the contrary, the defendants gave those names, colorful and threatening as they may be, to themselves. People in the community knew (and feared) these individuals because of their affiliation with these groups. At trial, the evidence will show that some defendants boasted about the existence of these subsets and their membership in them, and that the Short North Posse used Cut Throat and Homicide Squad to commit violent acts and engage in other racketeering activities in furtherance of the enterprise. Because the risk of unfair prejudice to Mr. Robinson is low and the probative value of this evidence is high, it is admissible under Rule 403.

---

[3] The foregoing discussion makes clear that the "nickname" cases on which Mr. Robinson relies in his motion do not support his request for exclusion of evidence. In each of the cases cited, the district court permitted the jury to hear the defendant's own nickname. Mr. Robinson's motion makes no mention of his own nickname, but instead asks the Court to prohibit the United States from referring to the names of Short North Posse sub-groups of which he was not a member. Moreover, in all of the cases that Mr. Robinson cites, the Sixth Circuit affirmed the admission of the defendants' nicknames. *See United States v. Reyes*, 51 Fed. Appx. 488, 494 (6th Cir. 2002) (affirming admission of evidence of defendant's nickname because "most of the witnesses used multiple nicknames," defendant "used [the nickname] while committing the crimes at issue," and "majority of the witnesses knew [defendant] by that name"); *United States v. Padin*, 787 F.2d 1071, 1079 (6th Cir. 1986) (affirming use of co-conspirators' nicknames at trial "because it was, in some instances, the only means available to the government to identify certain individuals whose actual names were unknown to witnesses"); *United States v. Lawson*, 535 F.3d 434, 442-443 (6th Cir. 2008) (concluding that admission of defendant's nickname at trial was harmless error, despite fact that "nickname was not necessary to identify him or connect him with the acts charged").

## CONCLUSION

For the reasons stated herein, the Court should deny Mr. Robinson's motion *in limine* and allow the introduction of evidence that is relevant to the counts at issue in Trial One.

Respectfully submitted,

CARTER M. STEWART
UNITED STATES ATTORNEY


s/ David M. DeVillers
DAVID M. DEVILLERS (0059456)
Assistant United States Attorney


s/ Kevin W. Kelley
KEVIN W. KELLEY (0042406)
Assistant United States Attorney


s/ Brian J. Martinez
BRIAN J. MARTINEZ (CA 224587)
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Opposition to Defendant Clifford Robinson's Motion *in Limine* was served this 14th day of December, 2015, electronically upon all counsel of record in this matter.

s/ Brian J. Martinez
BRIAN J. MARTINEZ (CA 224587)
Assistant United States Attorney
