**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CLIFFORD L. ROBINSON,**

    **Petitioner,**

    **v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**CASE NO. 2:20-CV-5611**
**CRIM. NO. 2:14-CR-127(16)**
**CHIEF JUDGE ALGENON L. MARBLEY**
**Magistrate Judge Chelsey M. Vascura**

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this Motion to Vacate under 28 U.S.C. § 2255. This matter is before the Court on to its own motion to consider the sufficiency of the petition pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings. For the reasons that follow, it is **RECOMMENDED** that this action be dismissed pursuant to Rule 4.

## I. BACKGROUND

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of the case as follows:

> The Short North Posse gang—and its two subsidiaries, the Homicide Squad and Cut Throat Committee—wreaked havoc for the better part of a decade in the Short North neighborhood of Columbus, Ohio. To support its drug enterprise, the Short North Posse conducted brutal home-invasion style robberies and planned and executed the murder of rivals, high-value targets, and cooperating witnesses. After a two-month-long jury trial, four of the five appellants—Robert Ledbetter, Deounte Ussury, Rashad Liston, and Christopher Harris—were convicted of RICO conspiracy for their membership in the Short North Posse enterprise. All five, including Clifford Robinson, were convicted of various murders in aid of racketeering and other similar crimes. On appeal, defendants collectively raise more than fifteen claims, only two of which have merit. Ussury's conviction for the murder of Dante Hill in aid of racketeering must be vacated because there is insufficient evidence that Ussury acted with the necessary statutory purpose, and Harris's and Robinson's convictions for murder by firearm during a crime of violence must be vacated in light of *United States v. Davis*, No. 18-431, —— U.S. –

––, ––––, 139 S. Ct. 2319, ––– L.Ed.2d ––––, 2019 WL 2570623 at *13 (June 24, 2019).

I.

In 2014, a federal grand jury returned an indictment against seventeen defendants, including the five here. The overriding count alleged a RICO conspiracy from 2004 to 2014, in which the Short North Posse enterprise and its associates committed overt racketeering acts ranging from murder and robbery to drug distribution and witness tampering. The indictment alleged more than ten counts of murder in aid of racketeering. More indictments followed and eventually thirteen defendants pleaded guilty, one was convicted after a solo trial, and the five defendants here were tried together before a jury.

At trial the Government put on more than one hundred witnesses, several of whom were former Short North Posse members. The evidence showed that the Short North Posse, which identified itself as a local affiliate of the national Crips gang, was engaged in buying, selling, and distributing cocaine and marijuana. The gang protected its business and supplemented its income through robberies, often armed and regularly of the brutal home-invasion variety. The Short North Posse maintained its clout through violence and intimidation against those who meddled in its business or harmed or disrespected its members.

Apparently, Ledbetter was the de facto leader of the gang, and under his management the gang formed two sub-groups, known as the "Cut Throat Committee" and "Homicide Squad," specializing in murders and robberies of rival gang members, competing drug dealers, and other deep-pocket targets. Ledbetter often orchestrated these jobs, and any gang members and outside associates who participated would typically be paid or split the spoils. Former Short North Posse members identified Ledbetter, Liston, Harris, and Ussury as members or associates of the Homicide Squad.

At trial, the jury heard evidence about eight charged murders. . . . Those murders include the revenge killing of Alan Johnson for the death of Ledbetter's brother, the murder of Donathan Moon during a night-time raid of a target's house and business, and the assassination of Crystal Fyffe for her cooperation with police. In addition to those murders, the jury heard about many other criminal acts in furtherance of the enterprise conspiracy—like a 2006 gun-battle between the Short North Posse and its rival gang, D-Block, which saw more than three hundred rounds fired and several people shot. After two months of trial, each of the five defendants was convicted and sentenced to at least one mandatory life sentence for murder in aid of racketeering under 18 U.S.C. § 1959, and all but Robinson were convicted of RICO conspiracy, 18 U.S.C. § 1962(d), among several other convictions and sentences.

*United States v. Ledbetter,* 929 F.3d 338, 344-45 (6th Cir. July 26, 2019). On March 17, 2017, Judgment was entered and Petitioner sentenced to a term of life imprisonment on the charge of murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2, to be served consecutively to a term of life on the charge of murder through the use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c), (j)(1) and 2. (ECF No. 1472.) On July 3, 2019, the Sixth Circuit affirmed Petitioner's conviction and sentence on murder in aid of racketeering, but vacated his judgment on use of a firearm during and in relation to a drug trafficking crime as invalid under *United States v. Davis*, -- U.S. --, 139 S.Ct. 2319 (2019). *United States v. Ledbetter*, 929 F.3d at 338, 360. On October 7, 2019, the United States Supreme Court denied the petition for a writ of certiorari. *Robinson v. United States*, -- U.S. --, 140 S.Ct. 317 (2019).

On September 27, 2020, Petitioner executed this Motion to Vacate under 28 U.S.C. § 2255. (ECF No. 1679, PAGEID # 19754.) He asserts as follows:

> All I'm asking for is Justice on my identity claim, as well as me never aiding a Racketeering network. I also was not given the opportunity to call any witnesses due to my attorney's insistence on not wanting to "tell stor[ies]" but state facts. His exact words.

(ECF No. 1679, PAGEID # 19746.)

## II. DISCUSSION

The United States Court of Appeals for the Sixth Circuit rejected Petitioner's claim of insufficiency of the evidence to support his conviction on murder in aid of racketeering and improper or inadequate identification evidence:

> Harris and Robinson were each convicted of several crimes for their involvement in an armed home-invasion robbery that led to the death of Donathan Moon. They raise various challenges to their convictions of murder in aid of racketeering, 18 U.S.C. § 1959(a)(1), and murder by firearm during a crime of violence, 18 U.S.C. § 924(c), (j).

3

The evidence showed that in August 2007 Rastaman Wilson, David Hurst, Robinson, and Homicide Squad members Harris and R.J. Wilson conducted an armed home invasion at Greg Cunningham's house, which doubled as a strip club and event space. Harris broke down the door, and the others began the assault. As Robinson charged through the battered door, he saw Donathan Moon, a guest of Cunningham's, bolt into a bedroom and shut the door behind him. Robinson followed and fired three rounds from an AK-47 assault rifle through the door. Once Robinson's shots were fired, R.J. Wilson entered the bedroom and shot Moon to death with a handgun. Robinson, Harris, and the others searched the house for the cash they were hoping to find, but found none and left.

The evidence supported two possible theories as to who initiated the robbery and why: either Robinson discovered that Cunningham kept large sums of money at his house/business and enlisted the Short North Posse to help steal the money in exchange for a cut of the loot, or Robinson was conscripted by the Short North Posse for the same purpose. Either way, the evidence showed that Cunningham often had large sums of cash at home because he ran his illegal entertainment business from there, and that the group was after that stash. One associate, David Hurst, testified that he agreed to be the getaway driver in exchange for a couple thousand dollars of the expected purse. From this, and the Short North Posse's customary splitting of robbery profits, the jury could have inferred that Harris and Robinson also expected to receive a cut of the proceeds in exchange for their service.

1. Robinson's Identity Claim

Robinson argues that there was insufficient evidence that he was involved in the robbery. However, he concedes the evidence showed that someone by the nickname "Tink" was involved and also that he went by "Tink." So Robinson is left to speculate that someone else with the nickname "Tink" must have participated. This is conjecture passing for argument. Two witnesses identified Robinson in court as the Tink that was involved in the murder. Both witnesses also identified characteristics of the Tink they knew, which matched Robinson—details like where his mother lived and that his first name was Clifford.

Robinson argues that all of this is insufficient because both witnesses who made in-court identifications had misidentified Robinson in photo arrays displayed to them during the earlier investigation. The Government counters that the photo of Robinson in the arrays was difficult to recognize. Regardless, it was for the jury to weigh those misidentifications against the in-court identifications and other identity evidence. *See Callahan*, 801 F.3d at 616. This court cannot now disturb those evidentiary determinations.

2. Evidence of Racketeering Purpose

4

Harris and Robinson were each convicted of murder in aid of racketeering, 18 U.S.C. § 1959(a)(1), for the murder of Donathan Moon. Each argues that there was not sufficient evidence that he committed the murder for one of the two possible statutory purposes—for pecuniary gain from the Short North Posse, or to increase their position within the gang. § 1959(a). But the jury was entitled to infer that Harris and Robinson participated in the robbery for pecuniary gain—to split the cash they were expecting Cunningham to have kept at his dual home/business venue. The jury could also infer that, since this was a bread-and-butter Homicide Squad robbery, any cash they stole amounted to enterprise profits, a cut of which they hoped to receive—from the enterprise. This is a proper application of the "enterprise profits" theory of pecuniary gain. As this court held in connection with an earlier Short North Posse appeal, "[h]aving concluded that this was a Short North Posse robbery, a rational jury could also conclude that [defendants] participated in the robbery to gain something of pecuniary value from the gang." See Holt, 751 F. App'x at 827.

Robinson argues that this theory cannot apply to him, because he was not himself a member of the Short North Posse enterprise. That is immaterial: Section 1959(a) is not limited to enterprise members. On the contrary, the pecuniary-gain prong paradigmatically covers actions by so-called independent contractors who perform violent crimes for or alongside an enterprise for profit. See Concepcion, 983 F.2d at 384. In fact, the defendant in Holt, 751 F. App'x at 821, was an outside associate as well.

3. Crime of Violence

For their participation in the Cunningham home invasion and Moon murder, Harris and Robinson were also convicted of murder by firearm during a crime of violence, 18 U.S.C. § 924(c), (j)(1). Here, the purported "crime of violence" was conspiracy to commit Hobbs Act robbery, which makes it a crime to conspire to "in any way or degree obstruct[ ], delay[ ], or affect[ ] commerce or the movement of any article or commodity in commerce, by robbery." 18 U.S.C. § 1951(a). Section 924(c)(3) defines "crime of violence" in two ways, but the parties agree that conspiracy to commit Hobbs Act robbery qualifies only if it meets § 924(c)(3)(B)'s residual definition. By that definition, a "crime of violence" is a felony offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B).

Harris and Robinson argue that their convictions under § 924(c) must be set aside because § 924(c)(3)(B)'s residual clause is unconstitutionally vague.1 The Supreme Court has now held that § 924(c)(3)(B)'s residual definition is unconstitutionally vague. *See United States v. Davis*, No. 18-431, ––– U.S. ––––, ––––, 139 S. Ct. 2319, ––– L.Ed.2d ––––, 2019 WL 2570623 at *13 (June 24, 2019). Because the Government relies only on that now-invalidated clause to support Harris's and Robinson's convictions under § 924(c), those convictions must be set aside.

5

*Ledbetter*, 929 F.3d at 359-61. Thus, to the extent that Petitioner intends to present this same issue here, it does not provide him a basis for relief. "It is well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Rhodes v. United States*, No. 2:15-cv-2756, 2:12-cr-00122, 2017 WL 978118, at *7 (S.D. Ohio Mar. 14, 2017) (citing *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999)). Moreover, "claims of insufficiency of the evidence are not properly considered in § 2255 proceedings." *United States v. Matsa*, No. 2:15-cv-700, 2:09-cr-297, 2017 WL 4469120, at *11 (S.D. Ohio Oct. 6, 2017) (citing *Scott v. Morrison*, 58 F. App'x 602, 603 (6th Cir. 2002) (other citations omitted)).

Further, Petitioner's claim of ineffective assistance of counsel likewise fails. Petitioner complains that his attorney refused to call defense witnesses; however, he does not identify the nature of any proposed testimony or the identity of any potential defense witnesses that would have assisted him. Thus, Petitioner cannot satisfy the test set forth in *Strickland v. Washington*, 466 U.S. 669 (1984), for establishing the ineffective assistance of counsel.

### III.   DISPOSITION

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED**.

### PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

        /s/ *Chelsey M. Vascura*___
        CHELSEY M. VASCURA
        UNITED STATES MAGISTRATE JUDGE